W. Timothy Needham, (CSB #96542)
Amelia F. Burroughs (CSB #221490)
**JANSSEN MALLOY LLP**
730 Fifth Street
P.O. Drawer 1288
Eureka, CA 95501
Telephone: (707) 445-2071
Facsimile:  (707) 445-8305

Attorneys for Plaintiffs David Figueiredo and Dana Figueiredo

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT

# OF THE STATE OF CALIFORNIA

| | |
|---|---|
| DAVID FIGUEIREDO and DANA FIGUEIREDO, <br><br>        Plaintiffs, <br><br>    vs. <br><br> NATIONWIDE MUTUAL INSURANCE COMPANY dba NATIONWIDE INSURANCE COMPANY, and DOES 1 through 50, inclusive, <br><br>        Defendants. | Case No. <br><br> **COMPLAINT FOR BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING** <br><br> **JURY TRIAL REQUESTED** |

    COMES NOW PLAINTIFFS, DAVID FIGUEIREDO and DANA FIGUEIREDO, and for a cause of action alleges as follows.

## PARTIES

    1.    Plaintiffs, David Figueiredo and Dana Figueiredo ("Figueiredos") are residents of Humboldt County, California.

    2.    Plaintiffs are informed and believe and, based on such information and belief allege, that defendant Nationwide Mutual Company dba Nationwide Insurance

Company("Nationwide") is an Ohio corporation authorized to and doing business in the State of California.

3.     Plaintiffs are unaware of the true identity, nature and capacity of each of the defendants designated herein as a DOE. Plaintiffs are informed and believe that each of the defendants designated as a DOE is in some manner responsible for the damages as alleged in this complaint. Upon learning the true identity, nature and capacity of the DOE defendants, plaintiffs will amend this complaint to allege their true names and capacities.

4.     Plaintiffs are informed and believe and, based thereon allege, that the defendants and each of them, were the agents, servants and employees of the other defendants, and each of them.

## JURISDICTION

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a).

## STATEMENT OF RELEVANT FACTS

6.     In 1997 the Figueiredos purchased a building in Fort Bragg, California known as the "Union Store."

7.     In 2004, the Figueiredos leased out a portion of that building to Autumn and Jess Stuckey, dba Bamboo Garden Spa.

8.     The Stuckeys made improvements to the building, including dividing portions of the leased premises into separate rooms.

9.     On or about April 11, 2007 the Stuckeys received an occupancy permit for those improvements from the Fort Bragg Building Department which had been signed off by the fire marshal.

10.     The relevant portions of the lease between the Figueiredos and the Stuckeys read as follows:

/ / /

/ / /

### Section 9. Alterations.

Tenant shall not make or suffer to be made, any alterations of the Leased Premises, or any part of the Leased Premises, without the prior written consent of Landlord, and any additions to, or alterations of, the Leased premises, except movable furniture and trade fixture, shall become at once a part of the realty and belong to Landlord.... Any alterations shall be in conformance with the requirements of all municipal, state, and federal authorities.

### Section 12. Landlord's Insurance

(a)     Landlord shall maintain fire and extended coverage, and at Landlord's option, earthquake insurance, throughout the Term. Tenant waives any right of recovery from the Landlord, Landlord's officers or employees, for any loss or damage (including consequential loss) resulting from any of the perils insured against in the standard form fire insurance policy.

### Section. 19 Damage and Destruction

(a)     Landlord shall make necessary repairs upon the occurrence of either:

(i)     partial destruction of the Leased Premises or the Company Store during the term....

A true and correct copy of that lease is attached hereto as **<u>Exhibit A</u>**.

### <u>CAUSE OF FIRE</u>

11.     On July 3, 2017, at approximately 8:30 p.m., a sprinkler head went off in the utility room at the Union Store. A fire sprinkler flow alarm notification was sent by the alarm company, and the fire department eventually responded. Because only one sprinkler head had gone off, the fire department assumed there had been a sprinkler head malfunction. Nevertheless, they shut off water to the sprinkler system affected area and instructed the building manager, Troy Barrett, to turn off the sprinkler system and to set up a fire watch, which he did. He had his son stay in the building July 3rd and the morning of July 4th.

12.     On July 4th at approximately 4 a.m. a smoke alarm, which is separate from the sprinkler alarm system, went off. There had apparently been a fire

/ / /

smoldering in the utility room which ignited causing smoke and fire damage to the premises.

13. The Stuckeys were insured under a small business insurance policy with State Farm Insurance, policy number 97-CF-N030-4, and a fire investigator hired by State Farm determined that the fire had been caused by oil rags which had been left in the Bamboo Spa utility room and then self-combusted. The Figueiredos were not named insureds under the State Farm policy and had no right whatsoever to the proceeds of that policy or to require the Stuckey's to make repairs under the lease.

14. Plaintiffs Figueiredo obtained insurance for the Union Store with Nationwide Insurance. That policy number was ACP CPP 3027187104.

15. The policy period for the Nationwide policy ran from May 5, 2017 to May 5, 2018. A true and correct copy of that policy is attached hereto as **Exhibit B.**

16. The policy was issued to the Figueiredos in Humboldt County, California and all premiums were paid in that County.

## POLICY LANGUAGE AT ISSUE

17. The Nationwide policy that insured the Figueiredos provided as follows:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM
### (CP 00 10 10 12)

**A.    Coverage**

We will pay for direct physical loss of or damage to Covered property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**4. Additional Coverages**

**e. Increased Costs of Construction**

   **(1)**    This Additional Coverage applies only to Buildings to which the Replacement Cost Optional Coverage applies.

   **(2)**    In the event of damage by a Covered Cause of Loss to a building that is Covered property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding, or

replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirement at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged, and

**(b)** You failed to comply with.

18. This policy language was changed by endorsement CP 04 46 10 12 as follows:

## CALIFORNIA – ORDINANCE OR LAW COVERAGE

**D. Coverage**

**1. Coverage A – Coverage For Loss To The Undamaged Portion of the Building**

With respect to the building that has sustained covered direct physical damage, we will pay under coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building

**G.** Under the endorsement we will not pay for loss due to any ordinance or law that:

**1.** You were required to comply with before the loss, even if the building was undamaged; and

**2.** You failed to comply with.

19. The policy language for additional coverage was then modified again, by endorsement CP 71 33 10 12, which reads:

/ / /

## COMMERCIAL PROPERTY PLATINUM PROTECTION PLUS ENDORSEMENT

3.      Under the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**, Section A. Coverage,4. Additional Coverages, Paragraph e. **Increased Cost of Construction** is deleted and replaced by the following:

### e. Ordinance or Law Coverage

(1)     If a Covered Cause of Loss causes direct physical damage to a building that is Covered Property and as a result of such damage you are required to comply with the ordinance or law, we will pay for loss or damage caused by enforcement of or compliance with the ordinance or law that regulates demolition, construction or repair of buildings, or establishes zoning or land use requirements at a covered property; and is in force at the time of loss for:

a)      The loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building

b)      The cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property; and

c)      The increased cost to:

(1)     Repair or reconstruct damaged portions of that building; and/or

(2)     Reconstruct or remodel undamaged portions of that building, whether or not demolition is required; when the increase cost is a consequence of a requirement to comply with the minimum

standards of the ordinance or
law.

The limiting language of Section (4) (e)(4) is no longer included in the
"Platinum Plus" endorsement.

20. The policy also includes the following endorsement:

**Commercial Property Conditions
(CP 70 67 (01-94))**

E. **LIBERALIZATION**

If we adopt any revision that would broaden the coverage
under this Coverage Part without additional premium within
45 days prior to or during the policy period, the broadened
coverage will immediately apply to this Coverage part.

G. **OTHER INSURANCE**

1.     You may have other insurance subject to the
same plan, terms, conditions and provision as
the insurance under this Coverage Part. If you
do, we will pay our share of the covered loss or
damage. Our share is the proportion that the
applicable Limit of Insurance under this
Coverage part bears of the Limits of Insurance
of all insurance covering on the same basis.

2.     If there is other insurance covering the same
loss or damage, other than that described in 1.
Above, we will pay only for the amount of
covered loss or damage in excess of the amount
due from that other insurance, whether you can
collect on it or not. But we will not pay more
than the applicable Limit of Insurance.

21.     On August 31, 2018, Nationwide Insurance Company wrote plaintiffs. In
that letter, it claimed that losses of $99,699.83 were not covered because those
losses were within the "other insurance" provision of the Nationwide policy because
State Farm had paid that amount to the Stuckeys, even though the Stuckeys had no
duty to make repairs under their lease with the Figueiredos and even though the
Figueiredos were not insureds under that policy. A true and correct copy of that
letter is attached as **Exhibit C.**

/ / /

22. Nationwide further claimed in its letter that repairs to the ceiling and fire sprinklers that were damaged by the fire were not covered because they were due to "an ordinance or law you were required to comply with before the loss" under Section 4(e) of its policy.

23. On October 30, 2018, plaintiffs wrote Nationwide explaining that the position taken by Nationwide was incorrect and requesting that it reconsider its position. That letter went on to explain that there were additional losses that were incurred and should be paid for, regardless of the legal arguments on "other insurance" and/or the "ordinance or law" exclusion. A true and correct copy of that correspondence is attached as **Exhibit D.** Rather than respond to plaintiff's letter, Nationwide simply reasserted its previous position. A true and correct copy of its email on November 8, 2018 to that effect is attached hereto as **Exhibit E**.

## **FIRST CAUSE OF ACTION**

### **(Breach of Contract – Nationwide Insurance Company)**

24. Plaintiffs herein incorporate paragraphs 1 through 23 above in their entirety and incorporates those allegations as if fully set forth herein.

25. Plaintiffs have performed all duties and responsibilities pursuant to the insurance contract and has made all payments pursuant thereto.

26. Defendant Nationwide has breached its duties to the plaintiffs in the following manner:

> (a) By failing and refusing to complete a full investigation;
>
> (b) By failing and refusing to respond to a request for explanation regarding its denial of coverage;
>
> (c) By failing to provide insurance coverage in a manner consistent with the expressed and implied obligations of its policy.

27. Specifically, Nationwide's claim that certain losses in the amount of $99,693.83 are not covered pursuant to G.3 of its Commercial Property Conditions because there was "other insurance" through State Farm that insured the Stuckey's is

incorrect and contrary to basic tenants of insurance construction and California law. As Plaintiffs explained to Nationwide in their letter of October 30, 2018, the Stuckey's insurance with State Farm **did not cover the same loss or damage**. Further, under any reasonable reading of the policy's "other insurance" language that provision must be read as "other insurance" of the Figueredo's, **which they did not have.** Finally, California law is clear that "other insurance" clauses cannot be read to leave the insured without recourse. As interpreted by Nationwide, the "other insurance" clause is an "escape clause" and contrary to public policy.

28. On November 8, 2018, Nationwide failed and refused to respond to any of the points raised in the Plaintiffs letter of October 30, 2018 and simply reiterated its denial of coverage.

29. As a result of the actions of defendant Nationwide, plaintiffs have sustained damages in the approximate amount of $99,693.83, or according to proof.

**WHEREFORE,** Plaintiffs pray for judgement as hereinafter set forth.

## SECOND CAUSE OF ACTION

30. Plaintiffs hereby incorporate paragraphs 1 through 29 above in their entirety and incorporate those allegations as if fully set forth herein.

31. The Nationwide policy specifically provided for coverage for damage incurred during repair to comply with "ordinance or law. "Nevertheless, Defendant Nationwide refused to pay for upgrades to the premises during the course of repair, claiming that those upgrades were due to "an ordinance or law you were required to comply with before the loss."

32. Plaintiffs pointed out in their correspondence of October 30, 2018 that the improvements by the Stuckeys had been approved by the Building Department and the Fire Marshall and, thus, there were no ordinance or law that they were required to be complied with before the loss. Plaintiffs further pointed out that the endorsement on which Nationwide relied to deny coverage had been replaced by the "Platinum Plus" endorsement which did not contain the "before the loss" provision.

Nevertheless, Nationwide refused to reconsider its denial.

33.     As a result of Nationwide's denial of coverage for upgrades to the premises during the course of repair Plaintiffs have been damaged in the amount of $52,497.80 or according to proof.

**WHEREFORE,** Plaintiffs pray for judgement as hereinafter set forth.

### THIRD CAUSE OF ACTION

34.     Plaintiffs hereby incorporate paragraph 1 through 33 in their entirety and incorporate those allegations as if fully set forth herein.

35.     In addition to the losses et forth above Plaintiffs also incurred fire losses for the following:

| | |
|---|---|
| Ceiling demolition | $5,900.00 |
| Replacement of ceiling drywall | $7,000.00 |
| Replacement of insulation | $1,772.25 |
| R&R ceiling fixtures and vents | $850.00 |
| Building Permits and inspections | $1,500.00 |
| **Subtotal** | **$1,7022.25** |
| 20% Contractors overhead and profit | $3,404.45 |
| **TOTAL ADDITIONAL EXPENSES:** | **$20,426.70** |

36.     Plaintiffs submitted a claim for such additional expenses under the policy in their letter of October 30, 2018, but their claim for these losses has been utterly ignored.

**WHEREFORE,** Plaintiffs pray for judgement as hereinafter set forth.

### FOURTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

37.     Plaintiffs herein incorporate paragraphs 1 through 36 above in their entirety and incorporate those allegations as if fully set forth herein.

38.     At all times mentioned herein, Nationwide agreed to act in good faith and deal fairly with plaintiffs, David and Dana Figueiredo, its insureds, when it

entered into the policy and accepted premiums from the plaintiffs.

39.     Defendant Nationwide's refusal to pay plaintiffs' claims under the policy at issue was in bad bath in that Nationwide, among other things:

    (a)    Failed to investigate the claim thoroughly;

    (b)    On information and belief, adopted an unduly restrictive interpretation of the policy in a manner calculated to deny the plaintiffs the amount due to them due under the policy;

    (c)    Failed to acknowledge and act reasonably upon communications with respect to plaintiffs' claims arising out of the policy;

    (d)    Failed to provide coverage for a claim after being provided notice.

40.     Defendant Nationwide's conduct constitutes "bad faith" in that its failure to provide coverage for plaintiffs' claim has caused plaintiffs not to be made whole for the clearly covered losses under the policy.

41.     As a direct and proximate result of defendant Nationwide's bad faith refusal to provide under the policy, plaintiffs, in addition to the losses covered by the policy, have sustained damages and loss of lease payments in the amount of $27,021.79, which losses continue to accrue. Further, plaintiffs were unable to move into the store themselves because they had not received payment to complete the construction, and thus were required to pay delay damages of $6,300.

42.     Further, plaintiffs, and each of them, suffered emotional distress as a result of the wrongful denial of benefits under their policy.

**WHEREFORE,** PLAINTIFFS PRAY for judgement as hereinafter set forth:

1.     First Cause of Action: for damages in the amount of $99,699.83, or according to proof;

2.     Second Cause of Action: for damages in the amount of $52,497.80 or according to proof.

3.     Third Cause of Action: for damages in the amount $20,426.70 or according to proof.

1         4.     Fourth Cause of Action for consequential damages in just and

2   reasonable amounts;

3         5.     For attorneys' fees pursuant to *Grant v Superior Court* (1985) 37 Cal.3d

4   813;

5         6.     Prejudgment interest; and

6         7.     For such other relief as the Court shall deem proper.

7   Date: December 12, 2018          JANSSEN MALLOY LLP

8

9                                       By: *W. Timothy Needham*

10                                      W. Timothy Needham
                                    Attorneys for Plaintiffs

11                                      David Figueiredo and Dana Figueiredo

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR BREACH OF CONTRACT
AND COVENANT OF GOOD FAITH
AND FAIR DEALING