1  W. Timothy Needham, (CSB #96542)
   Amelia F. Burroughs (CSB #221490)
2  **JANSSEN MALLOY LLP**
   730 Fifth Street
3  P.O. Drawer 1288
   Eureka, CA 95501
4  Telephone: (707) 445-2071
   Facsimile:  (707) 445-8305
5
   Attorneys for Plaintiffs David Figueiredo and Dana Figueiredo
6

7

8                  **UNITED STATES DISTRICT COURT**

9                      **NORTHERN DISTRICT**

10                 **OF THE STATE OF CALIFORNIA**

11

12 DAVID FIGUEIREDO and DANA            Case No. 3:18-cv-07493-WHA
   FIGUEIREDO,
13                                       **PLAINTIFFS' NOTICE OF MOTION AND
                                         MOTION FOR PARTIAL SUMMARY
14        Plaintiffs,                     JUDGMENT; POINTS AND
                                         AUTHORITIES**
15        vs.
                                         **Hearing date:      June 27, 2019**
16 NATIONWIDE MUTUAL INSURANCE           **Hearing time:      8:00 a.m.**
   COMPANY dba NATIONWIDE               **Courtroom:          12**
17 INSURANCE COMPANY, and DOES 1
   through 50, inclusive,
18                                       **Complaint filed: December 13, 2019**
                                         **Trial date:       March 23, 2020**
19        Defendants.                    **Before:           Hon. Judge William Alsup**

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.  INTRODUCTION………………………………………………………………...6

II.  STATEMENT OF RELIEF SOUGHT…………………………………………….....6

III. STATEMENT OF FACTS……………………………………………………………6

IV. LEGAL STANDARD APPLICABLE TO THIS MOTION…………………………….13

V.  ARGUMENT……………………………………………………………………14

    A. Basic Rules of Insurance Policy Interpretation Require That The Exclusions
       At Issue Be Read Narrowly…………………………………….....................................14

    B.  Plaintiffs Should Be Granted Partial Summary Judgment On Their First
       Cause Of Action For Breach Of Contract………………..…………………………15

       1. Nationwide's "Other Insurance" Provision, As Interpreted, Is Contract
         To Public Policy…………………………………………………………..15

       2. The Nationwide "Other Insurance" Exclusion Is Inappropriate On Its
         Face…………………………………………………………………..18

       3. The Exclusion, As Interpreted, Would Violate State Law……………………..20

    C.  Plaintiffs Should Be Granted Partial Summary Judgment On Their Second
       Cause Of Action For Breach Of Contract ……………………………........……..21

       1. Nationwide Had A Duty To Pay For Upgrades To The Insured's Property……..21

       2. Under Its "Platinum Plus" Endorsement……………………………………22

VI.  CONCLUSION …………………………………………………..…………..24

    A.  First Cause of Action………………………………………………...24

    B.  Second Cause of Action……………………………………………………..24

# TABLE OF AUTHORITIES

## CALIFORNIA CASES

*Aerojet-General Corp. v. Trans. Indem. Co.* 17 Cal.4th 38, 40 fn. 4 (1997)…………………..22

*Bay Cities Pav. & Grading, Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal.4th 854, 867 (1993)………19

*Burns v. California FAIR Plan Assn.*, 152 Cal.App.4th 646 (2007)……………………….19,20

*Century Surety Co. v. United Pac. Ins. Co.* 109 Cal.App.4th 1246 (2003)…………………16,17

*Certain Underwriters at Lloyds, London v. Arch Specialty Ins. Co.*, 246 Cal.App.4th 418,
      435 (2016)………………….....………………………………………………………16

*Commerce and Industry Ins. Co. v. Chubb Custom Ins. Co.*, 75 Cal. App. 4th
      739, 745 (1999)………………………………………………………….....15,16,21

*Dart Industries v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1079-1080 (2002)…...15,17,18

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1305 (1998) …..15,16,21

*Fire Ins. Exchange v. Superior Court*, 116 Cal.App.4th 446, 459……………………………20

*First Am. Title Ins. Co. v. Warehouse Lending Corp.*, 177 Cal.App.4th 106, 113 (2009)…….14

*Russell v. Williams*, 58 Cal.2d 487, 490 (1962)…………………………………………18,19

*State of California v. Continental Ins. Co.* 15 Cal.App.5th 1017 (2017)…………………...16,17

*Washington Mutual Bank v. Jacoby*, 180 Cal.App.4th  639, 644 (2009)…………………...18,19

## FEDERAL CASES

*American Alliance Ins. Co v. Brady Transfer and Storage Co.*, 101 F.2d 144,
      147 (8th Cir. 1939)…………...……………………………………………………..18

*American Ins. Co. v. Freeport Cold Storage, Inc.*, 703 F.Supp. 1475, 1485 (D. Utah 1986)….18

*Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000)…………………………………14

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986)…………………………………14

*Anderson v. USAA Cas. Ins. Co.*, No. C 06-07948 WHA, 2008 U.S. Dist. LEXIS
      16514, at *16-17 (N.D. Cal. Mar. 4, 2008)…………………………………..….14

*Boardman Petroleum v. Federated Mut. Ins.*, 926 F.Supp. 1566, 1580
      (U.S. Dist. Ga. 1995)………………………………………………………………22

*Control Natl Ins Co v Devonshire Coverage Corp.* 426 f. Supp 7, 10 FN 1
      (U.S. Dist. Neb.1976)………………………………………………………………8

*Moeller v. Taco Bell Corp.*, No. C02-05849 MJJ, 2007 U.S. Dist. LEXIS 60714,

    at *7 (N.D. Cal. Aug. 8, 2007)……………………………………………………..14

*Page v. Sun Insurance Office* 74 F 203, 205 (8th Cir. 1895)……………………………...21

*USF Ins. Co. v. Clarendon Am. Ins. Co.*, 452 Fed.Supp.2d 972, 986 (C.D. Cal. 2006)……….14


## STATUTES

USDC ND Rule 7………………………………………………………………………….5

USDC ND Rule 56……………………………………………………………………....5

Fed. R. Civ P. 56 ...………………………………………………………………………5

Fed. R. Civ. P. 56 (a)…………………………………………………………………..13,14


## REGULATIONS

California Insurance Code §591……………………………………………………………21.24

California Insurance Code §591(a)…………………………………………………………20,24

California Insurance Code § 2070……………………………………………………….....20

California Insurance Code §2071 …………………………………………………5,20,21,24

Mendocino County Building Code § 18.23.200…………………………………………23


## OTHER AUTHORITIES

7 Couch on Insurance 3d Sect.98.1………………………………………………………....18

9 Couch on Insurance 2d Sect. 37:1384……………………………………………………18

Deerings 2019………………………………………………………………...........20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 27, 2019, at 8:00 a.m. or as soon thereafter as counsel may be heard by the above entitled Court, located at the Phillip Burton Federal Building, 455 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 12, Plaintiffs will and do hereby move the Court for partial summary judgment on the grounds that there is no genuine issue as to any material fact, and that the moving party is entitled to partial summary judgment as a matter of law for the reason that:

### FIRST CAUSE OF ACTION - BREACH OF CONTRACT

The "other insurance" clause on which defendant Nationwide Mutual Insurance Company based its partial denial of coverage, is, as interpreted by Nationwide, against public policy, is, at best, ambiguous, and as interpreted, violates California Insurance Code §2071.

### SECOND CAUSE OF ACTION – BREACH OF CONTRACT

As to defendant Nationwide's denial of payments to comply with "ordinance or law", its denial conflicts with the coverage afforded under the "Platinum Plus Endorsement" for which Plaintiffs paid an additional premium, and, in any event, the exclusion at issue is inapplicable under the facts and law.

This motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure and local Rules 7 and 56 of the United States District Court for the Northern District of California. The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of David Figueiredo and W. Timothy Needham in Support of Plaintiffs' Motion for Partial Summary Judgment, the Exhibits attached thereto, and all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court.

Respectfully Submitted,

Dated: May 21, 2019          Janssen Malloy LLP

By: /s/ W. Timothy Needham
    W. Timothy Needham
     Attorney for Plaintiffs Figueiredo

**POINTS AND AUTHORITIES**

## I.     INTRODUCTION

In July 0f 2017, Plaintiffs David and Dana Figueiredo suffered a fire loss to a building they own in Fort Bragg, California. Their insurance carrier, Nationwide Mutual Insurance Company ("Nationwide"), refused to pay for a significant portion of the losses incurred claiming that, because tenants of the Figueiredos received payments from the tenants' insurance carrier, State Farm, this relieved Nationwide from paying its insureds, the Figueiredos, even though this left them without recourse for a significant portion of their loss. Further, despite the fact that the policy specifically provided coverage for building code upgrades after a loss, Nationwide refused to pay for those upgrades, claiming that they were subject to an exclusion to that coverage, even though an endorsement to the policy had removed that exclusion and, even if the exclusion had not been removed, would not apply here.

Plaintiffs now move for partial summary judgment on their first and second causes of action for breach of contract as to whether Nationwide's claimed exclusions are applicable under the facts and law.

## II.     STATEMENT OF RELIEF SOUGHT

Plaintiffs seek an order from this court against Nationwide on their First Cause of Action for Breach of Contract, holding that Nationwide is not entitled to reduce the amounts payable to Plaintiffs because of amounts paid to their tenants by the tenants' own insurance carrier.

Plaintiffs also seek an order from this Court on the Second Cause of Action for Breach of Contract, holding that the exclusion to the "ordinance or law coverage" relied on by Nationwide is inapplicable.

## III.     STATEMENT OF FACTS

In 1997, David and Dana Figueiredo purchased a building in downtown Fort Bragg, California, known as the "Union Store." (Declaration of David Figueiredo (hereinafter "Figueiredo" ¶ 2.)  The building is broken down into various offices and shops which are rented out by the Figueiredos. *Id.* Shortly after purchase the Figueiredos had a contractor install a fire sprinkler system.  (Figueiredo, ¶ 3.) The Figueiredos performed some additional improvements

on the building and obtained an occupancy permit in March of 1999. (Figueiredo, ¶ 3, and Exhibit A thereto.)

In 2004, the Figueiredos leased a portion of the building to Autumn and Jeff Stuckey, dba The Bamboo Garden Spa. (Figueiredo, ¶ 4.) The Stuckeys divided the leased premises into separate rooms and obtained an occupancy permit approving their improvements that was signed off by the fire marshal. (Figueiredo, ¶ 5 and Exhibit B thereto.) The improvements made by the Stuckeys were not done under the direction of the Figueiredos nor were the premises rented by the Stuckeys under the Figueiredos' control. (Figueiredo, ¶ 6.) The lease between the Figueiredos and the Stuckeys was renewed on August 1, 2015. (Figueiredo, ¶ 7 and Exhibit C thereto.) For purposes of this motion, the relevant portions of the renewed lease between the Figueiredos and the Stuckeys read as follows:

### LEASE LANGUAGE

### Section 9. Alterations.

Tenant shall not make or suffer to be made, any alterations of the Leased Premises, or any part of the Leased Premises, without the prior written consent of Landlord, and *any additions to, or alterations of, the Leased premises*, except movable furniture and trade fixture, *shall become at once a part of the realty and belong to Landlord*…. Any alterations shall be in conformance with the requirements of all municipal, state, and federal authorities.

### Section 12. Landlord's Insurance

(a)      *Landlord shall maintain fire and extended coverage*,
and at Landlord's option, earthquake insurance, throughout the Term. Tenant waives any right of recovery from the Landlord, Landlord's officers or employees, for any loss or damage (including consequential loss) resulting from any of the perils insured against in the standard form fire insurance policy.

### Section. 19 Damage and Destruction

(a)      *Landlord shall make necessary repairs* upon the occurrence of either:
(i)      partial destruction of the Leased Premises or the Company Store during the term…. (emphasis added. See Exhibit C to Figueiredo)

/ / /

/ / /

On July 4, 2017, a fire occurred at the Union Store causing considerable damage. (Figueiredo, ¶ 9.) The Figueiredos had fire insurance through Nationwide Mutual Insurance Company. (Figueiredo, ¶ 8.) The Figueiredos immediately tendered the loss for the damage to their property to their insurance carrier, Nationwide. (Figueiredo, ¶ 9.) The Nationwide policy is a "blanket" policy with building coverage of $10,200,000. (Declaration of W. Timothy Needham (hereinafter "Needham"), Exhibit A, Commercial Property Schedule Reference p. 1, NMIC PROD 000011; and Needham, Exhibit D, Nationwide's Response to Requests for Admissions (hereinafter "RRA") No. 1.)[1] The Figueiredos were charged an annual premium of $20,127 for that policy, of which $1500 was for the "Protection Plus-Platinum Premium." (Needham, Exhibit A, NMIC PROD 000011, Commercial Property Schedule Reference p. 1; Needham, Exhibit D, RRA No. 9.) Plaintiffs also paid an additional premium for increased costs of construction. (Needham, Exhibit A, at NMIC PROD 000019.)

## NATIONWIDE POLICY

The basic Nationwide policy pays the insured for direct loss or damage to the property, as well as the increased costs associated with rebuilding in compliance with minimum legal building standards. The "Increased Costs" clause of the basic policy does not compensate the insured for building to minimum building standards that they were required to comply with before the loss. The "California-Ordinance or Law Coverage" endorsement adds coverage for reconstructing undamaged portions of the building to comply with existing codes and retains the exclusion for pre-existing noncompliance. The "Protection Plus-Platinum Premium" endorsement supplants both the "Increased Costs" clause and the "California-Ordinance or Law Coverage" endorsement, compensating the insured for reconstruction of any portion not damaged that must be replaced to comply with building codes and ordinances, *and* the diminution in value of any portion allowed to remain. Critically, the "Protection Plus-Platinum

---

[1] A "blanket" policy covers multiple properties for a single premium with each individual structure protected to the full-face value of the policy. *Control Natl Ins Co. v Devonshire Coverage Corp.* 426 F. Supp. 7, 10 fn1 (U.S. Dist. Neb. 1976). Nationwide was asked to admit that it had issued a "blanket policy". Instead, it objected to the Request but at least agreed that the policy states "This is a blanket policy". (Needham, Ex. D RRA No. 8)

Premium" endorsement does away with the language excluding the cost of fixing pre-existing out-of-compliance conditions.

The relevant portions of the Nationwide policy are as follows:

### Building and Personal Property Coverage Form
### (CP 00 10 10 12)

**A. Coverage**

We will pay for direct physical loss of or damage to Covered property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss. (Needham, Exhibit A, NMIC PROD 000022.)

**4. Additional Coverages**

    **e.**    **Increased Costs of Construction**

        **(1)**    This Additional Coverage applies only to Buildings to which the Replacement Cost Optional Coverage applies.

        **(2)**    In the event of damage by a Covered Cause of Loss to a building that is Covered property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding, or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

        **(3)**    The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirement at the described premises and is in force at the time of loss.

        **(4)**    Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

            **(a)**    You were required to comply with before the loss, even when the building was undamaged, and

            **(b)**    You failed to comply with. (Needham, Exhibit A, NMIC PROD 000024.)

The policy language of section A.4 (e) was changed by endorsement CP 04 46 10 12 as follows:

### CALIFORNIA – ORDINANCE OR LAW COVERAGE

**D. Coverage**

    **1.**    **Coverage A – Coverage For Loss To The
Undamaged Portion Of the Building**

    With respect to the building that has sustained covered direct physical damage, we will pay under coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building

**G.** Under the endorsement we will not pay for loss due to any ordinance or law that:

    **1.**    You were required to comply with before the loss, even if the building was undamaged; and

    **2.**    You failed to comply with. (Needham, Exhibit A, NMIC PROD 000049.)

The policy language above was then modified by endorsement CP 71 33 10 12, which reads:

### COMMERCIAL PROPERTY PLATINUM PROTECTION PLUS ENDORSEMENT

    1.    Under the BUILDING AND PERSONAL PROPERTY COVERAGE FORM, Section A. Coverage, 4. Additional Coverages, Paragraph e. **Increased Cost of Construction** is deleted and replaced by the following:

**e.**    **Ordinances or Law Coverage**

**(1)**    If a Covered Cause of Loss causes direct physical damage to a building that is Covered Property and as a result of such damage you are required to comply with the ordinance or law, we will pay for loss or damage caused by enforcement of or compliance with the ordinance or law that regulates demolition, construction or repair of buildings, or establishes zoning or land use requirements at a covered property; and is in force at the time of loss for:

**a)**    The loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building

**b)**    The cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged

property; and

c)      The increased cost to:

(1)     Repair or reconstruct damaged portions of that building; and/or

(2)     Reconstruct or remodel undamaged portions of that building, whether or not demolition is required; when the increase cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law. (Needham, Exhibit A., NMIC PROD 000074.)

The exclusion contained in of Section (4)(e)(4) of the underlying policy and the "California-Ordinance or Law Coverage" endorsement **was not included** in the "Platinum Protection Plus" endorsement.

Additionally, the policy contains the following provisions regarding "Other Insurance":

**Commercial Property Conditions
(CP 70 67 (01-94))**

E. **LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage part.

G.      **OTHER INSURANCE**

1.      You may have other insurance subject to the same plan, terms, conditions and provision as the insurance under this Coverage Part.  If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage part bears of the Limits of Insurance of all insurance covering on the same basis.

2.      If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.  But we will not pay more than the applicable Limit of Insurance. (Needham, Exhibit A., NMIC PROD 000070)

/ / /

The policy also included an endorsement entitled "California Changes-Replacement Cost" that stated, among other things. "We will not pay for loss or damage to tenant improvements and betterments if others pay for repair or replacement." (Needham, Exhibit A, NMIC PROD 000054, ¶ (5)(b).)

### THE STUCKEYS' INSURANCE

The Stuckeys had separate insurance under a Day Spa policy with State Farm Insurance. (Needham Exhibit B, Bates p.3.) The Figueiredos were neither insureds or additional insureds under that policy and had no ability to control how those funds were spent. (Figueiredo, ¶ 10.)[2] The State Farm policy also included an "other insurance" clause nearly identical to that of Nationwide. (Needham, Exhibit B, p.41 ¶ 7.) The Stuckeys did not use those proceeds to repair the building nor were they required to under the lease. (Figueiredo, ¶ 11.) Nationwide has claimed that, at some point after the fire, the Stuckeys were paid for a portion of their loss by State Farm. (Figueiredo, ¶ 14, Exhibit F, p.2.) State Farm apparently did pay for some clean-up of the building to a company called "Serv-Pro". Again, how much it paid or why it paid those sums is not within the knowledge of the Figueiredos.

### DENIAL OF COVERAGE

In January 2018 Plaintiffs were told by Nationwide that, in determining the amount that would be due Plaintiffs, it would be deducting amounts paid to the Stuckeys by State Farm. Plaintiff David Figueiredo wrote a letter confirming that conversation, indicating "I can't understand how the amounts paid to Stuckey by State Farm are relevant to us, as these amounts have nothing to do with our obligation to repair the premises per our lease, nor our policy agreement with Nationwide for it to cover our building/owned improvements." (Figueiredo, 12, Exhibit D.) On August 31, 2018, over one year after the loss, the Figueiredos received a letter from Nationwide. (Figueiredo, ¶ 14, Exhibit F.) In that letter Nationwide acknowledged that the Stuckeys hadn't completed the repairs or released the funds to the Figueiredos but

---

[2]  The lease provided that the Figueiredos were to be additional insureds under any policy the Stuckeys obtained, but that did not occur.  (See Needham, Exhibit B, Bates p.8.)

claimed that, because the Stuckeys had received payments from State Farm in the amount of $99,609.83, Nationwide's coverage to the Figueiredos was in excess of that amount and it did not need to pay the Figueiredos for those losses. According to Nationwide, State Farm's payments to the Stuckeys constituted betterments or improvements to the property and were excluded from coverage under the "other insurance" provision of Nationwide's policy. (Figueiredo, Exhibit F, p. 2.) This left the Figueiredos without coverage for the repair of the portion of the building that had been occupied by the Stuckeys and for which the Figueiredos were responsible under the lease.

After the fire, the Figueiredos were informed that the sprinkler system would need to be upgraded during the repairs to comply with the law. (Figueiredo, ¶ 13.) Mr. Figueiredo had a friend, Cam Monk, who is a retired claims adjustor, write Nationwide on his behalf explaining that the sprinkler system would need to be upgraded to meet current National Fire Protection Association requirements. (Figueiredo, ¶ 13, Exhibit E.) Despite the fact that the policy specifically provided for "ordinance or law coverage" Nationwide claimed that such coverage was not required because the Figueiredos came under an exception to that coverage for "improvements you were required to comply with before the loss. . . and you failed to comply with." (Figueiredo, Exhibit F, p. 2.) However, that exception had been eliminated in the "Platinum Plus" endorsement for which the Figueiredos had paid an additional premium. Nationwide has admitted that the reasons for denial of coverage are those set forth in its letter of August 31, 2018. (Needham, Exhibit C, Nationwide's Responses to Interrogatories Nos. 5 and 6.)

As will be shown below, neither of the claimed exclusions is applicable, and the Court should grant partial summary judgment as to the First and Second Causes of Action.

## IV.   LEGAL STANDARD APPLICABLE TO THIS MOTION

Summary judgment is appropriate where "movant shows there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court is tasked with deciding whether there exists "any genuine factual issue that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Partial summary judgment is authorized to establish part of a claim. FED. R. CIV. P. 56(a). Motions for partial summary judgment follow the same standards and procedures as motions for summary judgment. *Moeller v. Taco Bell Corp.*, No. C02-05849 MJJ, 2007 U.S. Dist. LEXIS 60714, at *7 (N.D. Cal. Aug. 8, 2007) (Citations omitted.) Such motions are particularly applicable to determine how an insurance policy should be interpreted.   See *First Am. Title Ins. Co. v. Warehouse Lending Corp.*, 177 Cal.App.4th 106, 113 (2009); *USF Ins. Co. v. Clarendon Am. Ins. Co.*, 452 Fed.Supp.2d 972, 986 (C.D. Cal. 2006) ("Interpretation of an insurance policy is primarily a judicial function.")

## V.   ARGUMENT

### A.  Basic Rules of Insurance Policy Interpretation Required That The Exclusions At Issue Be Read Narrowly.

As this Court noted in *Anderson v. USAA Cas. Ins. Co.*, No. C 06-07948 WHA, 2008 U.S. Dist. LEXIS 16514, at *16-17 (N.D. Cal. Mar. 4, 2008):

> "While the burden is on the insurer to prove a claim covered falls within an exclusion, the burden is on the insured initially to prove that an event is a claim with in the scope of the basic coverage." '[O]nce the insured shows that an event falls within the scope of basic coverage under the policy, the burden is on the insurer to prove a claim is specifically excluded.' Furthermore, 'insurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas]. *. . exclusionary clauses are interpreted narrowly against the insurer.'* . . . Thus, 'the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.' The exclusionary clause 'must be conspicuous, plain and clear.' This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded." (Citations omitted, emphasis in original.)

Here, it is undisputed that the fire loss suffered by the Figueiredos is a loss within the basic scope of coverage under the language of the policy.  As noted by Nationwide in its letter

of August 31, 2018 to the Figueiredos, "(b)ased on our investigation and review of your policy contract, Nationwide Mutual Insurance Company's opinion is this loss was caused by water and smoke damage. Therefore, we have determined a portion of your property claim is covered under your policy." (Figueiredo, Exhibit F., p.1.) Nationwide has also admitted that is unaware of any failure by the Figueiredos to satisfy any conditions, precedent or covenant under the policy. (Needham, Exhibit C, Response to Interrogatory No. 10.) Thus, the question turns to whether Nationwide can meet **its burden** to show that any of the losses are "specifically excluded" under the "plain and unmistakable" language of the policy.

**B.  Plaintiffs Should Be Granted Partial Summary Judgment On Their First Cause Of Action For Breach of Contract.**

**1.  Nationwide's "Other Insurance" Provision, As Interpreted, Is Contrary To Public Policy.**

Here, the provision relied on by Nationwide to avoid paying the Figueiredos for nearly $100,000 in damages states that, "if there is **other** insurance **covering the same loss or damage** . . . we will only pay for the amount of covered loss or damage in excess of the **amount due** from that other insurance, whether you can collect it or not." (Emphasis added.) Based on that provision, Nationwide has refused to pay the Figueiredos for moneys received by the Stuckeys under their Day Spa policy with State Farm even though the Stuckeys did not repair the building and had no duty to do so. (Figueiredo, Exhibit F, p. 2)

The "other insurance "clause in the policy issued to the Figueiredos, as interpreted by Nationwide, is what is commonly referred to an "escape" clause, i.e., it allows Nationwide to avoid liability for losses that are potentially covered by its insurance. As courts have noted, "Public policy disfavors 'escape clauses' whereby coverage purports to evaporate in the presence of other insurance." *Dart Industries v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1079-1080 (2002). The same is true for "excess" clauses that seek to avoid an insurer's liability. See *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1305 (1998); See also *Commerce and Industry Ins. Co. v. Chubb Custom Ins. Co.*, 75 Cal. App. 4th 739, 745 (1999) ("When "excess only" clauses are found in primary liability policies, they are

treated the same way as escape clauses".)

The courts have consistently held that such "escape" or "excess" clauses are only applicable if the insured has another policy that covers the loss and is not left unprotected. Otherwise, the insured has paid premiums for nothing. As the court explained in *Certain Underwriters at Lloyds, London v. Arch Specialty Ins. Co.*, 246 Cal.App.4th 418, 435 (2016):

> "Escape clauses came to be so named because they permit an insurer to make a seemingly iron-clad guarantee of coverage, only to withdraw that coverage (and thus escape liability) in the presence of other insurance."

In *Century Surety Co. v. United Pac. Ins. Co.* 109 Cal.App.4th 1246 (2003) the insured was covered by four policies. The insured tendered the defense of an action to all four insurers and Century Surety refused to participate. *Id.* at 1250. The Century policy contained an "other insurance" clause which turned the policy into an excess policy if there was other insurance. *Id.* at 1251. Each of the other policies indicated that, if there was other insurance, the losses would be shared pro rata. *Id.* at 1252. Century Surety sought declaratory relief, contending that because its policy was "excess" it had no duty no contribute. *Id.* at 1254. The court of appeal disagreed. *Id.* Under those circumstances, the law requires that liability be prorated according to the amount of coverage afforded. *Id.* at 1255-1256. As the court stated "(t)he reason for this rule is that the conflicting provisions are deemed irreconcilable; if given effect, competing clauses would strand an insured between insurer's disclaiming coverage." *Id.* at 1256. As multiple courts have stated, regardless of the policy language attempting to shift liability to another insurer, this is always subject to "the proviso that the rights of the policyholder are not adversely effected." *Commerce and Indust. Ins. v. Chubb Custom Ins. Co.*, supra, 75 Cal.App.4th 739 at 748 fn.7, quoting *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* 65 Cal.App.4th 1279, 1294 fn. 4 (1998).

In *State of California v. Continental Ins. Co.* 15 Cal.App.5th 1017 (2017) the state sought to recover from various insurers the cost of cleaning up a hazardous waste site. Defendant Continental attempted to avoid an award of prejudgment interest by claiming its policy was in excess of the other insurance. Continental's "other insurance" clause was

nearly identical to that at issue here. *Id*. at 1028. In rejecting Continental's claim, the court stated " 'other insurance' clauses are intended to apply to contribution actions between insurers, not in coverage litigation between the insurer and the insured….(T)he availability of allocation among multiple insurers is essentially irrelevant to each insurers' obligation to indemnify (the insured) for the whole amount of the loss without taking into account any contribution that (another insurer) might be obligated to make. " (citations omitted) *Id*. at 1032. As further noted in *Dart Industries v. Commercial Union Ins. Co.* 28 Cal 4th 1059, supra, "(a)pportionment among multiple insurers must be distinguished from apportionment between the insurer and its insured….That apportionment has no bearing upon the insurers' obligations to the policy holder. …The insurers obligation is to cover the full extent of the policyholder's liability ( up to the policy limits.)" (citations omitted) *Id.* at p.1080

Unlike *Century Surety,* State Farm had no duty to pay the Figueiredos because they were not a named insured or an additional insured under its policy. There simply was no "other insurance" which could indemnify Figueiredos for the loss, whether collectable or not.  This is not an occasion where there are competing clauses and the dispute is between the insurers as to which will assure that the insured is fully reimbursed. Here, the insureds are left between a policy which provides them no coverage (State Farm) and an insurer (Nationwide) which claims it owes no responsibility due to non-existent coverage by a different insurer. Thus, the reasoning of *Century Surety* is significantly stronger when applied to these facts. Indeed, if the Figueiredos had been insured by State Farm it could play the same "other insurance" card as Nationwide, thus stranding the Figueiredos between competing excess clauses. (See Needham Exhibit B p.41 ¶ 7.) Under such circumstances the "escape clause" included in the Nationwide policy is contrary to public policy and should simply be read out of the policy.

Here, Nationwide's interpretation of its "other insurance" provision would encourage bad faith. According to Nationwide, while this may be a covered loss, if it can simply hold out until the tenant is paid under *their* insurance policy, it no longer has to pay its own insured for that loss, even though the tenant doesn't repair the building, and the insured can be left to twist in the wind defeating the very purpose of insurance. It would seem that including a provision

that would encourage an insurance carrier to delay payment to its own insured would be the antithesis of good faith and public policy.

### 2. The Nationwide "Other Insurance" Exclusion Is Inapplicable On Its Face

The purpose of "other insurance" clauses is to prevent over-insurance and double coverage under fire insurance policies. *Dart Industries, Inc. v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1079-1080 (2002). "Other insurance" exists only where multiple policies benefit the same person.

> "'Other' or 'double' insurance exists where two or more policies are effected upon or cover the same interest in the same, or part of the same, property, against the same risk, *and in the name or for the benefit of the same person*. 7 **Couch on Insurance** 3d. Sect. 98.1 As all of these conditions must occur it follows that when different persons have different interest in the same subject of insurance, each may insure his or her interest without creating other or double insurance." 9 **Couch on Insurance** 2d Sect. 37:1384.

This rule is almost uniformly followed. "The general rule as to other insurance clauses is that they exclude coverage only where two or more policies cover the *same interests*, in the *same property*, and in favor of or for the benefit of the *same person*." *American Ins. Co. v. Freeport Cold Storage, Inc*., 703 F.Supp. 1475, 1485 (D. Utah 1986) (Italics in original.) "It is a principle of long standing that a fire insurance policy does not insure the property covered thereby, but is a personal contract indemnifying the insured against loss resulting from the destruction or damage of his property." (Citations omitted.) *Russell v. Williams*, 58 Cal.2d 487, 490 (1962). See also *Washington Mutual Bank v. Jacoby*, 180 Cal.App.4th 639, 644 (2009). "The term 'other insurance' must, we think, be construed to apply to other insurance by the insured. Any doubt or ambiguity that might exist in this regard must be resolved against the insurer and in favor of the insured." *American Alliance Ins. Co v. Brady Transfer and Storage Co.*, 101 F.2d 144, 147 (8th Cir. 1939).

Here, if we look to the language of the exclusion, there was no **"other insurance"** which would indemnify the Figueiredos for **"the same loss or damage."** The Figueiredos were neither named insureds or additional insureds under the State Farm Policy. The language

of the lease provided that the tenants had no duty to replace or repair the property damage to the Union Store. Rather the lease provided that, once improvements were constructed, the Figueiredos took ownership thereof and had the duty to repair. A fire insurance policy "does not run with the land… (but) is a personal contract indemnifying the insured against the loss." *Washington Mutual Bank v. Jacoby*, supra, 180 Cal.App.4th at 644. Indeed, that appears to be acknowledged in the policy. (Needham, Exhibit A., "We will not pay more than your financial interest in the property.". policy p, 11. Para 4(d) NMIC PROD 000032)

There was no duty of State Farm to cover the loss in question, nor was there a duty for the Stuckeys to pay for the loss to the building. The State Farm policy thus cannot cover "the same loss or damage". As *Russell* points out, insurance is a policy personal to the insured, covering their loss, not the losses of someone else. The State Farm policy covered the Stuckeys for their loss or damage, not the Figueiredos. As noted, the Nationwide policy specifically states that Nationwide will not have to pay for tenant improvements or betterments "*if others pay for the repair or replacement.*" (Needham, Exhibit A. NMIC PROD 000036) The obvious corollary is that, if others don't pay, Nationwide will.

Further, the policy language indicates that it will pay in excess of the "amount due from that other insurance." However, it fails to state **due to whom**.  The only qualifier to that language is "whether **you** can collect it or not." This necessarily implies that the amount must be due to "you" the insured, not some stranger. Here, there was no amount due by State Farm to the Figueiredos. If Nationwide had wanted to indicate it would be excess over insurance proceeds due to others it could just as easily have said "*due to anyone*" although one doubts any reasonable insured would ever agree to such a proposition. At best, the policy is ambiguous and, as such must be construed to give effect to the objectively reasonable expectations of the insureds. *Bay Cities Pav. & Grading, Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal.4th 854, 867 (1993).

Defendants will no doubt cite to *Burns v. California FAIR Plan Assn.*, 152 Cal.App.4th 646 (2007) for the proposition that "other insurance" should include insurance that is in the name of a different party. However, *Burns* is easily distinguishable. In Burns, two insureds, a life tenant (Burns) and a remainderman (Trust) each carried insurance on a house with a

different insurer. *Id.* at 650. The house burned down and the insurance carriers prorated the loss of the insureds according to their respective interests. *Id.* The court noted that each of the Plaintiffs had a separately insurable interest in the property destroyed (*Id* at p. 651) and that each was seeking to recover for the full value of the property even though that "would approximately double the actual damage caused by the fire." *Id.* at 653. It noted that "significantly" neither insured presented evidence that its losses were more than it had received (*Id* at 658) and that, to allow such additional recovery would do violence to "the essence and spirit" of insurance. *Id* at 653. While it agreed that the "other insurance" provision could apply even if there were different insureds this was only true where the insured was "fully compensated." *Id* at 658. Again and again the court in *Burns* indicated that the pivotal issue was whether the insured was fully compensated.

Here on the other hand, the Stuckeys, according to the terms of the lease, had no insurable interest in the property. Further, unlike *Burns,* the Figueiredos *were not* fully compensated for their loss. To the extent, if any, that State Farm or the Stuckeys repaired any of the damage to the building, the Figueiredos do not seek reimbursement for that loss, even though that ultimately rewards Nationwide for its delay.

### 3.     The Exclusion, As Interpreted, Would Violate State Law.

California Insurance Code § 2070 provides that "(all) fire policies on subject matter in California shall be on the standard form . . .." Insurance Code § 2071, in turn, sets forth the standard language. The standard language need not be used, so long as the fire coverage is substantially equivalent *or more favorable* to the insured. *Fire Ins. Exchange v. Superior Court*, 116 Cal.App.4th 446, 459. Here, the exclusionary language in the policy does not appear within the mandatory language of Insurance Code § 2071. The closest equivalent language is that portion of the statute which reads, "[t]his company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectable or not." See also, CA Ins. Code §591(a) (Deerings 2019) ("In case of double insurance, the several insurers […] in fire insurance […] shall contribute ratably, without regard to the dates of the several policies.")

This is not an occasion where the language of the policy provides more favorable coverage than that set forth in Insurance Code §§ 2071 or 591. Even if the Figueiredos were a named insured under the State Farm policy, which they were not, and actually possessed double insurance, which they did not, Nationwide would still be liable under Insurance Code Sections 2071 and 591 for the percentage its insurance bears to the total coverage. See *Commerce and Indust. Ins .v Chubb Custom Ins. Co.* 75 Cal.App.4th at 739, supra. As stated in *Firemen's Fund*, 65 Cal.4that 1305, supra, "(i)n cases of conflict between liability policies stating coverage is excess over all other available insurance and liability insurance policies providing for pro rata contribution , the 'excess only' policies must contribute pro rata to the coverage afforded the 'pro rata-only policies". (Citations omitted.) Here, the State Farm policy has a nearly identical "escape" clause to that of Nationwide. (See State Farm policy, Needham, Exhibit B p. 41, ¶ 7, Bates stamp 79.) California law under those circumstances unequivocally states that each insurer pays pro rata. See also, *Page v. Sun Insurance Office* 74 F 203, 205 (8th Cir. 1895) Since the entire State Farm coverage was for $102,709[3] and the total coverage by Nationwide was $10,200,000, Nationwide's share of the loss would be calculated as follows: $10,200,000 plus $102,709 equals $10,302,709. $10,200,000 divided by $10,302,709 = 99%. Surely the Figueiredos should not have less coverage than if they had actually been a named insured under the State Farm policy.

### C. Plaintiffs Should Be Granted Partial Summary Judgment On Their Second Cause Of Action For Breach Of Contract.

### 1. Nationwide Had A Duty To Pay For Upgrades To The Insured's Property Under Its "Platinum Plus" Endorsement.

As a result of the fire, Plaintiffs were required to repair the sprinkler system which, in turn, needed to be upgraded to comply with existing codes. As noted above, the original policy had a limitation providing that Nationwide did not need to pay costs due to compliance with an

---

[3]  See Needham Exhibit D, Response to Request for Admissions No. 24.

ordinance or law on damaged property that "(a) you were was required to comply with before the loss, even if the building was undamaged and (b) you failed to comply with." (Section A (4) (e)). The exclusionary language was continued in the "California Ordinance or Law Coverage" endorsement. However, the language was deleted and replaced in the "Commercial Property Platinum Protection Plus Endorsement" for which the Figueiredos paid an additional premium and which states specifically that it is replacing Section A(4)(e). That Endorsement **does not contain** the "comply with before the loss" exclusion.

If there is a conflict between an endorsement and the body of the policy, the endorsement controls. *Aerojet-General Corp. v. Trans. Indem. Co.* 17 Cal.4th 38, 40 fn. 4 (1997). Thus, the Platinum Protection Plus Endorsement controls over the original policy. Further, courts have held that where, as here, there are conflicting endorsements, the endorsements must be read in favor of the insured. See *Boardman Petroleum v. Federated Mut. Ins.*, 926 F.Supp. 1566, 1580 (U.S. Dist. Ga. 1995). (See also Nationwide Policy, Commercial Property Conditions, CP7057. "e. Liberalization: If we adopt any provision that would broaden the coverage under this coverage part without additional premium with 45 days prior to or during the policy period, the broadening coverage will immediately apply. . .". (Needham, Exhibit A, NMIC PROD 000070.)) Here, the language of the California Ordinance or Law endorsement on which Nationwide relied to deny coverage for expenses to bring the building up to code are simply not contained in the Platinum Protection Plus endorsement for which the Figueiredos paid a significant additional premium.

**2. Even if the Policy Exclusion Applied, the Upgrades are Still Covered.**

As mentioned earlier, every policy must be read as a layman would read it. The coverage language of the policy broadly protects the insureds for the cost of upgrades to comply "with any ordinance or law." The exclusionary language in the California Ordinance or Law Endorsement indicates that Nationwide will not, however, pay for any costs "due to an ordinance or law *that you were required to comply with before the loss*, even if the building was undamaged." (emphasis added.)

/ / /

Both the original improvements by the Figueiredos and the subsequent improvements by the Stuckeys received certificates of occupancy. By definition, a certificate of occupancy indicates that the structure is in compliance with all building codes. The Mendocino County Building Code § 18.23.200, which is applicable to the City of Fort Bragg, states "After the structure(s) have been completed and all inspections which have been required by the enforcing agency have been conducted, and work approved, the enforcement agency shall issue a Certificate of Occupancy […]" (Plaintiffs' Request for Judicial Notice, Nos. 1 and 2.) Therefore, under any reasonable reading of the policy, there was no ordinance or law with which the Figueiredos had to comply. Nationwide appears to claim that, in hindsight, the Mendocino Building Department was in error. The building official is the person that determines whether ordinances or laws have been complied with, not the insurance carrier using 20/20 hindsight. Otherwise, to assure coverage, every property improvement would need, in addition to an inspection by the building inspector, an additional inspection by a structural engineer. Even then there would be no assurance that, after a loss, an insurance carrier couldn't claim there was some ordinance or law not complied with.

Also, to the extent Nationwide claims that any violation of law or ordinance was due to acts by the Stuckeys, the policy provides that "(a)ny act or neglect of any person other than you or beyond your direction or control will not effect this insurance." (Needham, Ex. A, NMIC PROD 000070, Commercial Property Conditions ¶ B.) Thus, even if the Stuckeys or their contractor failed to comply with any building codes in the construction of the tenant improvements this should not affect the Figueiredos coverage.

Nationwide further claims that the reason for its denial of coverage is that the Figueiredos didn't get continuing inspections of the sprinkler system. However, nothing in the exclusion mentions inspections. To the contrary, the policy states that the ordinance or law referenced in that exclusion is "an ordinance or law that regulates the construction or repair of buildings." (Needham, Exhibit A, NMIC PROD 000026, ¶ 4(e)(3).) The policy exclusion does not say "construction, repair or *inspections*." If Nationwide had wanted to include the failure to get updated inspections as an additional reason for denial of coverage it could have done so.

1   Again, it strains credulity to think that a reasonable policyholder would have believed that they

2   would need to submit the property to regular inspections to maintain coverage. If that were

3   required the policy should at least alert the insured to that fact. Therefore, the court should

4   enter partial summary judgement on the second cause of action holding that Nationwide is

5   liable for the cost of upgrades.

## VI.    CONCLUSION

### A.  First Cause of Action

As shown above, the "other insurance" exclusion in the Nationwide policy is an "escape clause" which allows Nationwide to avoid coverage for damages that any reasonable insured would expect to be covered and for which the Figueiredos paid premiums. While, on rare occasions, those clauses have been upheld in disputes between insurance carriers, that has only been with the provision that the rights of the insured are protected. Further, as interpreted, the policy exclusion is, at best, ambiguous. An insurance policy is a personal contract indemnifying the insured against their loss, not the losses of someone else. The insurance policy of the Stuckeys covered them for their loss, not the losses of the Figueiredos. Reading the exclusion narrowly, as one must, there simply was no insurance covering "the **same** loss or damage." Finally, under any circumstances, the exclusion cannot violate state law. Here, even if the Figueiredos had other insurance, Nationwide would still be liable for 97% of the loss under Insurance Code Sections 2071 and 591. Its attempt to read its policy more broadly than allowed by statute must be denied.

### B.  Second Cause of Action

Defendants attempt to deny coverage for code upgrades is controverted by the language of the "Platinum Protection Plus" endorsement. As pointed out, this endorsement changes the language of the policy to eliminate the very exclusion on which Nationwide relied to deny coverage. Further, even if that exclusion were in effect, because the improvements at issue had

26   / / /

27   / / /

28   / / /

been approved by the building department, there was simply no "law or ordinance" with which the Figueiredos were required to comply.

Respectfully Submitted,

Dated: May 21, 2019                Janssen Malloy LLP


By:  /s/ W. Timothy Needham
W. Timothy Needham
Attorney for Plaintiffs

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PARTIAL
SUMMARY JUDGMENT; POINTS & AUTHORITIES
CASE No.3:18-cv-07493